**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| OOIDA RISK RETENTION GROUP, INC.,<br><br>        Plaintiff,<br>    v.<br><br>MARC A. BORDEAUX**,** an individual;<br>ROBERT M. BURTS, an individual; DOES I-V,<br><br>        Defendants. | 3:15-cv-00081-MMD-VPC<br><br><br>**ORDER** |

Before the court is a motion to compel production of documents filed by Robert Burts ("Burts") (#66).  OOIDA Risk Retention Group, Inc. ("OOIDA") opposed (#70), and Burts replied (#75).  Upon review of the record and the arguments advanced by the parties, the court grants in part and denies in part Burts's motion.  Further, as discussed below, the court requests that OOIDA provide certain documents to the court for *in camera* review.

## I.      BACKGROUND

The present action stems from a single-vehicle truck accident on the morning of July 19, 2013.  (#66 at 4.)  Marc Bordeaux ("Bordeaux"), the owner of the truck involved, fell asleep at the wheel and caused the vehicle to drift off the side of the roadway and strike an embankment.  (*Id.*) Burts was sleeping in the truck's sleeper berth when the accident occurred, and "was tossed about . . . like a rag doll." (*Id.*)

A series of interactions between Burts, Bordeaux, OOIDA, and counsel followed; while setting the stage for the tone of the disputes that have followed, suffice to say that they are not directly relevant to the matter at hand.[1]  (*See id.* at 6–17.)  In short: OOIDA alerted Bordeaux that

---
[1]  Both sides dedicate significant portions of their filings to the multitude of wrongs committed

they would defend him under a reservation of rights, and, on October 22, 2014, initiated an action for declaratory relief in federal court.  (*Id.* at 10.)  On July 1, 2015, Burts and Bordeaux entered into a settlement agreement giving Burts a stipulated judgment and an assignment of Bordeaux's rights and claims against OOIDA.  (*Id.* at 13, Ex. 21.)  OOIDA learned of the settlement agreement, and on July 17 moved to amend its complaint in this case to address issues raised by the settlement. (#70 at 3; #23.)  In his answer to OOIDA's amended complaint, Burts asserted counterclaims for breach of contract, breach of the implied covenant of good faith and fair dealing, and insurance unfair trade practices.  (#29 at 9–12.)

The present discovery dispute began in October 2015.  On October 20, OOIDA responded by email to Burts's Second Interrogatories and Request for Production of Documents with responses, objections, and a privilege log.  (#70 at 9, Ex. 9.)  That same day, Burts responded with a letter and objected to the sufficiency of the privilege log.  (*Id.*, Ex. 10.)  OOIDA responded to Burts's letter on October 27, and elaborated somewhat on the factual bases for the protections asserted in the privilege log.  (*Id.*, Ex. 11.)  OOIDA also provided a supplemented privilege log on November 5.  (#60 at 2, Ex. 3.)  On November 6, Burts sent another letter to OOIDA outlining his arguments as to why many of the documents listed in the privilege log were improperly withheld, and the parties participated in a telephone conference to discuss the outstanding discovery issues. (#66, Ex. 37; #60 at 2–3.)

The dispute was brought to the attention of the court in separate case management reports filed by the parties on November 10, 2015 (#s 60, 61).  Because the parties had been unable to resolve the matter, the court requested briefing at a case management conference on November 17. (#62 at 2.)  Burts subsequently filed a motion to compel production of the disputed documents on December 2.  In his motion, Burts describes the documents as falling within five categories: (1) documents authored by or received by the liability adjuster, Mr. Barry Ziskind; (2) communications

---

against them by opposing counsel.  These accusations distract the court and do nothing to advance the parties' arguments.  Moving forward, the court asks that counsel strive to conduct themselves with civility and professionalism.

between coverage counsel and liability defense counsel; (3) communications between adjusters and re-insurers; (4) communications or documents related to reserves; and (5) documents related to communications with third-party counsel or staff.  (#66 at 18–19.)  OOIDA maintains that the documents are protected by the attorney-client privilege and work product doctrine.  (#70 at 13–14.)

## II.    DISCUSSION

### A.    Motion to Compel Threshold Requirements

#### 1.    Local Rule 26-7(b)

As a threshold matter, OOIDA contends that the court should dismiss Burt's motion to compel discovery on the grounds that he has failed to comply with Local Rule 26-7(a).  (#70 at 14–16.)

Local Rule 26-7(a) states that "[a]ll motions to compel discovery or for protective order shall set forth in full the text of the discovery originally sought and the response thereto, if any."  LR 26-7(a).  The rule aids the court in its determination of whether "particular responses to requests for production were improper," a task made more difficult if it does not know "what request was made or what response was given."  *Plaintiffs Ins. Co. v. Balle*, No. 2:10-cv-02205-APG-NJK, 2013 WL 5323968, at *4 (D. Nev. Sept. 20, 2013).  "Practically speaking, the failure to comply with LR 26-7(a) improperly shifts the burden to the Court to sift through and root for issues that should be clear on the face of a discovery motion. . . . '[J]udges are not like pigs hunting for truffles buried in briefs' and it is not the responsibility of the judiciary 'to sift through scattered papers in order to manufacture arguments for parties.'" *Taylor v. Aria Resort & Casino, LLC*, No. 2:11–cv–01360–KJD–CWH, 2013 WL 2355462, at *4 (D. Nev. May 29, 2013) (quoting *Agarwal v. Or. Mut. Ins. Co.*, No. 2:11-cv-01384-LDG, 2013 WL 211093, at *3 (D. Nev. Jan. 18, 2013)).

Burts responds that OOIDA elevates "form over substance," and he sufficiently identified the documents that are in dispute.  (#75 at 7.)  Further, he maintains that OOIDA and the court are well-aware of the issues raised in his motion, given the court's request for briefing at the November 17 case management conference.  (*Id.*)

Irrespective of the above rationalization, Burts clearly did not follow LR 26-7(a).  True, he identified the bates numbers of the documents he seeks, and attached a copy of OOIDA's privilege log.  (#66 at 18–19, Ex. 36.)  He did not, however, provide the full text of the discovery originally sought or of OOIDA's responses, as the rule requires.[2]

Other courts within this district have denied motions to compel discovery based on a failure to comply with LR 26-7(a).  *See, e.g.*, *Argawal*, 2013 WL 211093.  Still, denial of the motion is not compelled.  Policy weighs in favor of addressing motions on the merits, and it is within the court's discretion to proceed despite procedural deficiencies.  *See Santos v. Baca*, No. 2:11-cv-01251-KJD-NJK, 2015 WL 6956643, at *2 (D. Nev. Nov. 10, 2015); *U–Haul Co. of Nev., Inc. v. Gregory J. Kamer, Ltd.*, No. 2:12–cv–00231–KJD–CWH, 2013 WL 1249706, at *2 (D. Nev. Mar. 26, 2013).  Because there is sufficient information for the court to proceed, consideration of the merits is appropriate.

### 2.    Federal Rule of Civil Procedure 37(a)(1) and Local Rule 26-7(b)

OOIDA also suggests that "there is a reasonable basis to conclude that Burts's counsel has failed to comply with the good faith meet and confer requirements under the Federal Rules of Civil Procedure and this Court's Local Rules."  (#70 at 21 n.16.)

Fed. R. Civ. P. 37(a)(1) requires a party moving to compel discovery to "include a certification that the movant has in good faith conferred or attempted to confer" with the party resisting discovery, in an effort to resolve the dispute without court action.  Similarly, this court's local rules provides that "[d]iscovery motions will not be considered unless a statement of the movant is attached thereto certifying that, after personal consultation and a sincere effort to do so, the parties have been unable to resolve the matter without Court action."  LR 26-7(b).

---

[2] Instead, Burts submitted to the court thirty-six exhibits related to the accident, Burts's injuries, OOIDA's handling of Burts's claims and Bordeaux's defense, the state court judgement, etc.—the majority of which have little bearing on the discovery dispute at hand.  (*See* #66, Exhibits 1–35; #75, Exhibit 1.)

1   Courts within the District of Nevada "have held that 'personal consultation' means the

2   movant must 'personally engage in two-way communication with the nonresponding party to

3   meaningfully discuss each contested discovery dispute in a genuine effort to avoid judicial

4   intervention.'" *Cardoza v. Bloomin' Brands, Inc.*, — F. Supp. 3d —, 2015 WL 6123192, at *6 (D.

5   Nev. Oct. 16, 2015) (quoting *ShuffleMaster, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166, 171

6   (D. Nev. 1996)).   The meet-and-confer process is more than a mere formality, and "[c]ourts may

7   look beyond the certification made to determine whether a sufficient meet-and-confer actually took

8   place." *Id.*

9   The pending motion to compel includes certification that the good faith meet-and-confer

10   was conducted.  (#66 at 20, Ex. 37.)  As discussed above, the parties exchanged several letters and

11   spoke telephonically before raising the issue with the court.  Although there is some question as to

12   the depth of discussion over the phone (*see* #70 at 10; #60 at 2–3), individualized objections were

13   addressed in the parties' correspondence.  Under the circumstances, the meet-and-confer process

14   was adequate to fulfill Burts's obligations under federal and local rules.  *See Cardoza*, 2015 WL

15   6123192, at *7 (meet-and-confer process insufficient where counsel failed to discuss specific

16   discovery objections).

17   **B**.      **Legal Standards**

18   **1.      Scope of Discovery**

19   As amended effective December 1, 2015, Fed. R. Civ. P. 26(b)(1) provides that parties may

20   discover any nonprivileged matter that is "relevant to any party's claim or defense and proportional

21   to the needs of the case."  This amended rule, which took effect December 1, 2015, was intended to

22   "emphasize the need to impose 'reasonable limits on discovery through increased reliance on the

23   common-sense concept of proportionality.'"  *Roberts v. Clark Cnty. Sch. Dist.*, — F.R.D. —, No.

24   215-cv-00388-JAD-PAL, 2016 WL 123320, at *7 (D. Nev. Jan. 11, 2016) (quoting John Roberts,

25   *2015 Year-End Report on the Federal Judiciary* 6 (Dec. 31, 2015)).   To determine whether a

26   discovery request is proportional, courts are to consider "the importance of the issues at stake in the

27   action, the amount in controversy, the parties' relative access to relevant information, the parties'

resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Information need not be admissible to be discoverable. *Id.*

### 2.     Attorney-Client Privilege

Where the jurisdiction of a federal court is based in diversity, state law governs the availability of the attorney-client privilege. *KL Group v. Case, Kay & Lynch*, 829 F.2d 909, 918 (9th Cir. 1987); Fed. R. Evid. 501. The parties disagree as to which state's laws govern here. Barts contends that the law of the forum state is presumed to apply, and that OOIDA has not overcome that presumption. (#75 at 8.) OOIDA agrees that Nevada law may apply, but suggests that because the insurance policy at issue in this case was issued in California, it is "not a foregone conclusion." (#70 at 17.)

The court need not decide the question. As OOIDA recognizes, Nevada and California law are materially the same regarding the substantive elements of attorney-client privilege. (*Id.*) The parties have both addressed OOIDA's assertion of attorney-client privilege according to Nevada law (#66 at 19–20; #70 at 17–18); as such, the court may proceed under the assumption that Nevada law applies.

Nevada's attorney-client privilege permits a client to prevent disclosure of confidential communications between the client or client's representative and the lawyer or lawyer's representative, or between the lawyer and the lawyer's representative, where such communications are "made for the purpose of facilitating the rendition of professional legal services . . . ." Nev. Rev. Stat. § 49.095. A "representative of a client" is "a person having authority to obtain professional legal services, or to act on advice rendered pursuant thereto, on behalf of the client." *Id.* § 49.075.

As discussed by the United States Supreme Court, "the privilege has the effect of withholding relevant information from the fact-finder," and so "applies only where necessary to achieve its purpose. Accordingly it protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Fisher v. United* States, 425

U.S. 391, 403 (1976); *see also Diamond State Ins. Co. v. Rebel Oil Co., Inc.*, 157 F.R.D. 691, 698 (D. Nev. 1994).  The Nevada Supreme Court has also held that the privilege impedes the search for truth, and thus should be construed narrowly.  *Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 625 (D. Nev. 2013) (citing *Whitehead v. Nev. Comm'n on Judicial Discipline*, 873 P.2d 946, 968 (Nev. 1994)).  The party asserting the privilege bears the burden of proving its validity.  *Phillips*, 290 F.R.D. at 627; *see also Cal. State Auto. Ass'n Inter-Ins. Bureau v. District Court*, 788 P.2d 1367, 1368 (Nev. 1990).

In *Ballard v. Eighth Judicial District Court*, 787 P.2d 406, 407–08 (1990), the Nevada Supreme Court held that "the attorney-client privilege applies to insurers only when the statement is taken by the insurer at the express direction of counsel for the insured."  Burts cites *Ballard* to support his argument that OOIDA's assertion of privilege is improper with respect to the disputed documents, as they do not concern communications performed at the express direction of counsel. (#66 at 21–24.)

A close reading of *Ballard* reveals that its rule is inapposite to the present situation.  There, the court considered a statement made by a tortfeasor to her automobile liability insurance carrier following an auto accident.  *Ballard*, 787 P.2d 407.  When the tortfeasor sought to discover the statement, the insurer asserted attorney-client privilege over the statement based on the theory that the insurer was acting as an agent of the tortfeasor's attorney.  *Id.*  The court found the statement was not privileged, articulating the rule that such a communication is covered only if made at the express direction of the insured's counsel.  *Id.* at 408.  *Ballard*, therefore, is limited to communications between insurers and insureds; those are not the types of communications at issue here.  *See* 1 Paul R. Rice, *Attorney-Client Privilege: State Law Nevada* § 4:29 (2015).

**3.    Work Product Doctrine**

The work product doctrine is a "qualified immunity" governed by federal law, *Admiral Ins. Co. v. U.S. District Ct. for Dist. of Az.*, 881 F.2d 1486, 1494 (9th Cir. 1989), and is broader than the attorney-client privilege, *see United States v. Nobles*, 422 U.S. 225, 238 n.11 (1975).  The doctrine

-7-

shields from discovery "documents and tangible things prepared that are prepared in anticipation of litigation or for trial by or for another party or its representative."  Fed. R. Civ. P. 26(b)(3).

The "in anticipation of litigation" requirement includes both a temporal and a motivational component.  *Equal Rights Ctr. v. Post Props., Inc.*, 247 F.R.D. 208, 210 (D.D.C. 2008).  Thus, at the time the document was prepared, the party claiming the doctrine's protection must "have had a subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable."  *Id.* (internal quotation omitted).  In addition, the party "must demonstrate that in light of the nature of the document and the factual situation of the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation."  *Id.* (internal quotation omitted).

Documents generated in the ordinary course of business are generally not protected under the work product doctrine, even if produced at a time when litigation was anticipated.  *Griffith v. Davis*, 161 F.R.D. 687, 690 (C.D. Cal. 1995).  To this end, "[r]eports prepared by or for insurers present particular difficulties as responding to claims and preparing for resulting litigation are significant parts of the ordinary business of insurers."  8 Charles Alan Wright et al., *Federal Practice and Procedure* § 2024 (3d ed. 2015).  "The boundary between claims adjusting materials prepared in the ordinary course of processing claims and work-product prepared in anticipation of litigation evades precise demarcation.  Occasionally, courts must draw these lines through *in camera* inspections."  *Schmidt v. Cal. State Auto. Ass'n*, 127 F.R.D. 182, 184 (D. Nev. 1989); *see also Abueg v. State Farm Mut. Auto. Ins. Co.*, No. 2:14-cv-00635-GMN-GWF, 2014 WL 5503114, at *3 (D. Nev. Oct. 30, 2014) ("An insurance claim file can straddle the line between 'ordinary course of business' and work done 'in anticipation of litigation.'").

As with the attorney-client privilege, the party claiming the protection of the work product doctrine bears the burden of demonstrating its applicability.  *LightGuard Sys., Inc. v. Spot Devices, Inc.*, 281 F.R.D. 593, 598 (D. Nev. 2012). Even if applicable, however, the doctrine is not an absolute shield.  *Abueg*, 2014 WL 5503114, at *3 (citing *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)).  Production of "ordinary" work product may be ordered if the party seeking discovery

demonstrates a "substantial need" and "undue hardship" in obtaining "the substantial equivalent of the materials by other means." *Id.*; Fed. R. Civ. P. 26(b)(3).

**C.    Analysis**

Burts argues that OOIDA has improperly withheld a multitude of documents, which Burts describes as falling within five categories: (1) documents authored by or received by the liability adjuster, Barry Ziskind ("Ziskind"); (2) communications between coverage counsel and liability defense counsel; (3) communications between adjusters and re-insurers; (4) communications or documents related to reserves; and (5) documents related to communications with third party counsel or staff. Notably, many of the disputed documents appear in multiple categories.

**1.    Documents Authored or Received by Barry Ziskind, Liability Adjuster**

The first category of documents Burts seeks is of documents authored or received by Ziskind, an OOIDA liability adjuster. The documents are stamped with bates numbers 1366, 1367, 1950-1951, 1952-1953, 2518, 2519, 2521, 2522, 2523-2527, 2528, 2530, 2623-2624, 2704-2709, 2796-2802, 2803-2813, and 2834-2840. (#66 at 18.) OOIDA maintains that the documents are protected by the attorney-client privilege and/or work product doctrine.

**a.    Attorney-Client Privilege**

Pursuant to OOIDA's privilege log, documents 1366, 1367, 1950-1951, 1952-1953, 2518, 2519, 2523-2527, 2528, 2623-2624, and 2704-2709 were authored or received by Ziskind and are protected by the attorney-client privilege. (#66, Ex. 36.) Burts contends that most of the documents are e-mails between Ziskind and coverage counsel,[3] and are not privileged for three reasons: (1) the communications were not performed at the direction of coverage counsel; (2) as OOIDA's liability adjuster, Ziskind should not have been communicating with coverage counsel because "he had a direct conflict of interest by virtue of OOIDA's duty to defend;" (3) and the

---

[3] OOIDA disputes this characterization, asserting that the log refers to just two emails between Ziskind and coverage counsel. (#70 at 19 (citing document number 2623-2624).)

privilege log does not demonstrate that the communications' purpose was to obtain or provide legal services, and not to carry out OOIDA's ordinary business practices.  (*Id.* at 18, 22–23; #75 at 10.)

The first two reasons proffered are irrelevant to the attorney-client privilege analysis.  First, for the reasons discussed above, *Ballard* does not apply to the documents at issue.  It is of no consequence that coverage counsel did not direct the communications to occur.

Second, Burts cites *Armstrong Cleaners, Inc. v. Erie Insurance Exchange*, 364 F. Supp. 2d 797 (S.D. Ind. 2005), and *Universal Casualty Company v. Triple Transport*, No. 4:08–CV–1822 BSM, 2010 WL 3199637 (E.D. Ark. Aug. 11, 2010), for the proposition that an insurer must build a "Chinese Wall" between liability and coverage counsel to prevent the sharing of information.  (# 66 at 22–23, 23 n.9.)  However, neither holding is so emphatic, and neither case addresses attorney-client privilege.  Applying Indiana ethics rules, *Armstrong Cleaners* found that a "Chinese Wall" between front-line adjusters was not enough to mitigate the risk of a conflict of interest where insurer's counsel was to defend an insured under a reservation of rights; on the facts, the insureds were entitled to select their own counsel.  364 F. Supp. 2d at 817, 820.  In *Universal Casualty*, the court merely found that there was an issue of fact as to whether an adjuster assigned to both the coverage and liability actions had breached his fiduciary duty to the insured.  2010 WL 3199637, at *3.  Burts provides no other support for his argument that attorney-client privilege was destroyed as a result of Ziskind's role.  To the contrary, as OOIDA points out, courts within this district have clearly stated that "a corporation's attorney-client privilege extends to communications by any corporate employee *regardless of position* when the communications concern matters within the scope of the employee's corporate duties and the employee is aware that the information is being furnished to enable the attorney to provide legal advice to the corporation."  *Plaintiffs Ins. Co.*, 2013 WL 5323968, at *7; *see also Admiral Ins. Co.*, 881 F.2d at 1492 (citing *Upjohn v. United States*, 449 U.S. 383, 394 (1981)).

Burts's final argument is more successful.  For the attorney-client privilege to attach, the documents must have been confidential and made for the purpose of obtaining or providing legal advice.  With the exception of document 2704-2709, which is simply described as "claim notes,"

the documents Burts seeks are emails that discuss the liability lawsuit, coverage issues, budget, reserves, and re-insurers.  (#66, Ex. 36.)

To determine whether an e-email is privileged, the Nevada Supreme Court instructs courts to look "to the content and recipients of the e-mail."  *City of Reno v. Reno Police Protective Ass'n*, 59 P.3d 1212, 1218 (2002).  That counsel is "cc'd" on an email is not enough to trigger the attorney-client privilege, nor will the privilege attach where counsel is providing business advice or conducting "investigative work in the capacity of an insurance claims adjuster, rather than as a lawyer." *Phillips*, 290 F.R.D. at 627–628, 630; *In re Allen*, 106 F.3d 582, 602 (4th Cir. 1997).

From OOIDA's log descriptions alone, it is unclear whether the withheld documents are privileged.  In particular, it seems that the claim notes and emails about budget and reserves may stem from OOIDA's ordinary business practices.  Further, while not raised by Burts, it is problematic that the privilege log does not contain a key to identify the roles of the individuals sending or receiving documents.  Some of the names are familiar from the parties' filing, but the court is left to assume that others are proper recipients of confidential communications.  In sum, the log does not contain enough detail for the court to conclusively determine whether documents 1366, 1367, 1950-1951, 1952-1953, 2518, 2519, 2523-2527, 2528, 2623-2624, and  2704-2709 are protected by attorney-client privilege.

### b.    Work Product Doctrine

OOIDA asserts that, in addition to being privileged, the above-cited documents are protected work product.  OOIDA also claims work-product protection for documents 2521, 2522, 2530, 2796-2802, 2803-2813, and 2834-2840.  (*See* #66, Ex. 36 at 7–8, 19–20.)

According to OOIDA, the documents are protected work product because (1) they were prepared by or for OOIDA, and (2) they were prepared after OOIDA reasonably anticipated litigation of the coverage and bad faith issues.  (#70 at 26.)  Burts responds that it is not enough that the documents were created after the date that litigation was anticipated; OOIDA must also show that the primary reason for creating the documents was to prepare for litigation.  (#75 at 15–16.)  To

carry that burden, Burts contends that affidavits or other evidence beyond the documents are required.  (*Id.* at 16.)

Burts relies on *Continental Casualty Co. v. Marsh*, No. 01 C 0160, 2004 WL 42364 (N.D. Ill. Jan. 6, 2004)[4] for the proposition that OOIDA must have produced affidavits or other evidence. The court there remarked:

> [A]bsent specific evidence to the contrary, courts often presume that materials that are part of a factual evaluation or investigation into an insured's claim—such as investigative reports—that were prepared by or for an insurer prior to a final coverage decision were prepared in the ordinary and routine course of the insurer's business.  To put it another way, unless the party opposing production comes forth with specific evidence to rebut the presumption, demonstrating there was a reasonable anticipation of litigation at the time the document was created, and that the primary reason for creating the document was to prepare for litigation, the work product doctrine will not apply.

*Id.* at *8 (internal citations omitted).

Burts ignores a critical piece of the quoted passage: the presumption against work product protection applies "prior to a final coverage decision."  *Id.*  OOIDA decided to deny coverage on April 24, 2014, and communicated the denial to Burts's counsel that day.  (#70 at 27; #70, Ex. 4 at 6.)  After that date, the *Continental Casualty* presumption does not appear to apply, reducing the need for affidavits or other external evidence.

Further, Burts's "primary purpose" standard is not the correct measure for resolving the issue of work product protection.  In *In re Grand Jury Subpoena*, 357 F.3d 900, 907 (9th Cir. 2003) the Ninth Circuit adopted the "because of" standard for documents that could be characterized as having been prepared for multiple purposes.  *Id.* at 907–08 (9th Cir. 2003) (quoting *United States v. Aldman*, 132 F.3d 1194 (2nd Cir. 1998) (emphasis added)).  Applying the standard to documents in an insurance claim dispute, the *Moe v. System Transport, Inc.* court observed:

---

[4] In its filings, Burts incorrectly cites this case as *76CO v. Marsh*, 2004 U.S. Dist. LEXIS 76 (N.D. Ill. 2004).  (#66 at 31; #75 at 15.)

In the context of insurance claim disputes, the nature of the insurer's activity may eventually develop into activity undertaken in anticipation of litigation where a sufficient degree of adversity arises between the insurer and the insured or claimant.

In determining that point in time at which an insurer's activity shifts from the ordinary course of business to anticipation of litigation, a court must determine "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of the prospect of litigation.*"

270 F.R.D. 613, 625 (D. Mont. 2010) (quoting *Dion v. Nationwide Mut. Ins. Co.*, 185 F.R.D. 288, 292 (D. Mont. 1998).  Importantly, the "because of" standard "does not consider whether litigation was a primary or secondary motive behind the creation of a document."

OOIDA contends that it anticipated litigation as early as April 24, 2014, when OOIDA told Burts's counsel that coverage would be denied and Burts's counsel threatened bad faith litigation in response, but no later than May 27, 2014, when OOIDA retained outside coverage counsel to prepare for litigation.  (#70 at 27, Ex. 4 at 6.)  Burts does not dispute either date, or offer an alternative.

Documents 2518, 2519, 2521, 2522, 2523-2527, 2530, 2623-2624, 2796-2802, 2803-2813, and 2834-2840 are emails sent between July 2, 2015 and October 7, 2015.  (#66 at 36.)  The privilege log describes the emails as addressing the budget from outside coverage counsel, reserves, re-insurers, coverage issues, the coverage lawsuit, and the liability lawsuit.  (*Id.*)  Considering the subject of the emails, and that OOIDA had just learned of Burts's and Bordeaux's settlement agreement, it seems clear that OOIDA was acting in anticipation of litigation, even if the emails served a dual purpose of furthering ordinary business activities.  Thus, applying the "because of" standard, the emails are protected work product.  Burts made no attempt to show a substantial need for the documents, or an undue hardship in obtaining their equivalent.  Accordingly, the work product doctrine's qualified immunity remains intact, and Burts is not entitled to discover the documents.

Documents 1366, 1367, 1950-1951, 1952-1953, and 2528 are emails that were sent earlier, between May 21, 2014 and May 27, 2014.  The emails address the liability lawsuit, coverage issues,

and coverage counsel.  (#66, Ex. 36.)  They were arguably prepared in anticipation of litigation, as Burts's counsel had threatened a bad faith suit and OOIDA was preparing to retain outside counsel. However, the adversity between the parties was far less in May, 2014 than in July, 2015, and the emails may have nothing to do with anticipated litigation.  The best course, it seems, is to review the documents *in camera* inspection; because OOIDA also claims attorney-client privilege for these documents, the court may consider both questions at once.

Finally, document 2704-2709 consists of claim notes created on "various" dates.  (#66, Ex. 36 at 18.)  It is OOIDA's burden to show the work product doctrine applies, *LightGuard Sys., Inc.*, 281 F.R.D. at 598, however, OOIDA has made it impossible for the court to determine whether the notes were prepared before or after litigation was anticipated.  Because OOIDA has not met its burden, the document is not protected work product.

### 2.    Communications between Coverage Counsel and Liability Defense Counsel

The second category of documents that Burts seeks to discover is correspondence between coverage counsel and insurance defense counsel.  (#66 at 18; #75 at 11.)  In its privilege log, OOIDA asserted both attorney-client privilege and work product protection over eleven email chains, described as sent to or from Mr. Moore or Mr. Verlander, Bordeaux's defense counsel: numbers 1982-1983, 1984, 2010-2064, 2523-2527, 2619-2622, 2625-2628, 2631-2634, 2673-2676, 2851-2864, 2877-2881, and 2882-2883.  (#66, Ex. 36.)

OOIDA maintains that Burts's motion with regard to this second category is moot, as all non-privileged communications with defense counsel have been produced.  (#70 at 23.)  OOIDA explains that the referenced documents are email chains "where the first communication was a discoverable email that has already been produced elsewhere and the rest of the chain is privileged."  (*Id.* (quoting a November 20, 2015 letter sent by OOIDA to Burts's counsel.))  Burts responds that he "is not required to accept OOIDA's counsel's unsworn and unsupported assertions regarding the documents," given (1) that OOIDA has previously represented that all emails had been produced, only to later turn up more; and (2) that OOIDA has produced just four emails from the eleven email chains identified.  (#75 at 10–11.)

1    In its privilege log, OOIDA was not required to provide a separate entry or explanation for

2    each email within an email chain.  *See Philips*, 290 F.R.D. at 642.  Nevertheless, as OOIDA

3    recognizes, certain emails within the email chains are not privileged and are discoverable.  From the

4    privilege log alone, the court cannot determine whether all discoverable emails have indeed been

5    produced.  Thus, the court must review the documents *in camera* to ensure that no discoverable

6    emails remain.

7    **3.    Communications with Reinsurers**

8    The third category of disputed documents involves correspondence between OOIDA and its

9    third-party reinsurer, and includes documents 1368, 1902-1904, 1905-1907, 1908-1910, 1911-1913,

10   1914, 1915, 1916-1925, 2519, 2522, 2795, 2803-2813, 2814-2816, 2817, 2824, 2825-2833, 2834-

11   2840, 2841, and 2842-2846.  (#66 at 19.)

12   OOIDA maintains that sharing privileged or work product communications with reinsurers

13   does not waive their protection.  (#70 at 24.)  Although OOIDA does not say so explicitly, the

14   argument seems to stem from the common interest doctrine, under which parties with common

15   legal interests may share privileged attorney-client advice or work product without waiving

16   protection.  *Progressive Cas. Ins. Co. v. F.D.I.C.*, No. 2:12–cv–00665–KJD–PAL, 2013 WL

17   5947783, at *10 (D. Nev. Nov. 1, 2013).  OOIDA cites *Lipton v. Superior Court*, 48 Cal. App. 4th

18   1599, 1618 (1996), in which the California Court of Appeal explained, "where reinsurance

19   documents include attorney-client or protected work product communications they would be

20   entitled to the same privilege protection as would similar communications between the ceding

21   insurer and its attorneys handling the insured's claim."   The court relied at least in part on a

22   California statute requiring an insurer with reinsurance to "communicate all representations of the

23   original insured, and also all the knowledge and information he possesses, whether previously or

24   subsequently acquired, which are material to the risk."  Cal. Ins. Code § 622; *Lipton*, 48 Cal. App.

25   at 1618 n.19.  As previously noted, the insurance contract between OOIDA and Burts was entered

26   into in California.  (#70 at 17.)

27

-15-

Burts does not contend that OOIDA effected a waiver by sending documents to reinsurers. Rather, Burts challenges OOIDA's assertion of the attorney-client privilege and/or work product doctrine on the basis that OOIDA again failed to show that the communications with the reinsurer were for the purpose of obtaining or providing legal services.  (#75 at 12; #66 at 29.)  He goes on to cite a number of cases in which courts have ordered that communications with reinsurers be produced, contending that the courts did so over assertions of privilege or work product doctrine. (*See* #66 at 28–29.)  Those cases, however, are distinguishable on their facts, contain little analysis, or do not seem to stand for the proposition that Burts advances.  *See, e.g.*, *Nat'l Union Fire Ins. Co. v. Donaldson Co., Inc.*, 2014 WL 2865900, at *5 (D. Minn. 2014) (objection to production of reinsurance documents based on relevance, not one based on the work product doctrine); *City of Myrtle Beach v. United Nat'l Ins. Co.*, 2010 WL 3420044, at *8 (finding reinsurance information irrelevant and denying discovery); *RSUI Indem. Co. v. Am. States Ins. Co.*, 2015 WL 778874, at *7 (reinsurer communications ordered to be produced, but no discussion of attorney client privilege or work product doctrine); *Progressive Cas. Ins. Co. v. F.D.I.C.*, 298 F.R.D. 417, 425 (N.D. Iowa) (rejecting blanket assertion of privilege over reinsurer communications).

Here, the majority of the reinsurer communications at issue are emails sent between July 28, 2015 and October 1, 2015, and which discuss the liability lawsuit, coverage issues, reserves, and the budget from outside coverage counsel.  (#66, Ex. 36.)  Based on the subject of the emails and the posture of the parties at the time the emails were sent, OOIDA has carried its burden of demonstrating that the emails were prepared in anticipation of litigation.  Burts's motion is denied as to documents 1368, 1902-1904, 1905-1907, 1908-1910, 1911-1913, 1914, 1915, 2519, 2522, 2795, 2803-2813, 2814-2816, 2817, 2824, 2825-2833, 2834-2840, 2841, and 2842-2846, as he has made no effort to overcome the qualified immunity bestowed by the work product doctrine.

One notable exception in the category is document 1916-1925, for which no date is given. Without a date, the court cannot find that it was prepared in anticipation of trial.  Accordingly, the document is discoverable and must be produced.

### 4.    Redacted Information Related to Reserves

1   Burts next takes issue with OOIDA's redaction of reserve information from documents

2   1487-1491 and 1492-1503, and withholding of documents 1902-1904, 1905-1907, 1908-1910,

3   1911-1913, 1914, 1915, 1916-1925, 2519, 2522, 2530, 2700-2702, 2704-2709, 2795, 2796-2802,

4   2803-2813, 2814-2816, 2817-2824, 2825-2833, 2834-2840, 2841, and 2842-2846, which include

5   reserve information and are also allegedly protected by attorney-client privilege and/or work

6   product doctrine.  Burts argues that the documents were "generated in OOIDA's ordinary course of

7   business," and are thus discoverable.  (#66 at 29.)   OOIDA responds that the redacted reserve

8   information is irrelevant to Burts's bad faith claim, and that other documents were withheld are

9   otherwise protected.  (#70 at 25.)

10   Contrary to OOIDA's assertion, the "bulk of cases" to consider the issue have concluded

11   that reserve information is relevant to whether an insurer acted in bad faith.  *Donaldson*, 2014 WL

12   2865900, at *4 (collecting cases).   In *Bernstein v. Travelers Insurance Co.*, for example, the

13   Northern District of California opined that reserve information was illustrative of the insurer's state

14   of mind and motives with respect to its claim handling practices, which "could constitute critical

15   areas of inquiry in bad faith cases."  447 F. Supp. 2cd 110, 1107 (N.D. Cal. 2006) (citing *Lipton*, 48

16   Cal. App. 4th 1599); *see also Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 284 F.R.D.

17   132, 139 (S.D.N.Y. 2012).

18   OOIDA's only basis for redacting reserve information from documents 1487-1491 or 1492-

19   1503 is relevancy; no privilege or work product protection is claimed.  Because the reserve

20   information is relevant to Burts's bad faith claim, OOIDA must produce unredacted versions of the

21   documents.

22   Documents 1916-1925 and 2700-2702 must also be produced.  Although OOIDA claims

23   they are protected work product, it failed to identify the dates on which the documents were created.

24   Once again, this omission precludes a finding that the documents are protected work product.

25   The remaining documents, numbers 1902-1904, 1905-1907, 1908-1910, 1911-1913, 1914,

26   1915, 2518-2519, 2522, 2530, 2704-2709, 2795, 2796-2802, 2803-2813, 2814-2816, 2817-2824,

27

2825-2833, 2834-2840, 2841, and 2842-2846, have been discussed in prior sections.[5]   Document 2704-2709 is not work product, but may be protected by the attorney-client privilege; it is to be reviewed *in camera*.   The others were found to be protected work product.   Accordingly, those are not discoverable.

### 5.    Communications with Third-Party Counsel and Staff

The final category of disputed documents includes communications that appear to have been authored or received by Mr. Bordeaux, Mr. Cox, Burts's counsel, or Burts's counsel's staff.   The documents are stamped with bates numbers 2656-2657, 2688-2690, and 2882-2883.   (#66 at 19.) Burts argues that these documents must be produced because "[o]bviously these documents were not communications between OOIDA and their counsel . . . ."   (#66 at 24.)

OOIDA offers the same explanation as for communications between coverage and liability defense counsel, discussed above: a non-privileged email was sent to third-party counsel or staff, and was included in a subsequent email chain between OOIDA's coverage counsel.   (#70 at 26.) OOIDA maintains that the initial email has been produced, and the documents Burts now seeks are protected by the attorney-client privilege and/or work product doctrine.   (*Id.*)   Burts again responds that he need not accept OOIDA's counsel's word that all non-privileged documents have been produced.   (#75 at 14–15.)

As with the emails between coverage counsel and liability defense counsel, the court cannot conclusively determine from the log whether all discoverable emails between third-party counsel and staff have been produced.   Accordingly, OOIDA must produce documents 2656-2657, 2688-2690, and 2882-2883 for the purposes of an *in camera* review.

### III.    CONCLUSION

In light of the foregoing, the court hereby **GRANTS IN PART** and **DENIES IN PART** Burts's motion to compel production of documents (#66), consistent with the following:

---

[5] 2704-2709 and 2796-2802 were authored or received by Barry Ziskind; the remaining documents are communications with reinsurers.

The motion is **GRANTED** as to documents 1487-1491, 1492-1503, 1916-1925, and 2700-2702, which OOIDA must produce in their unredacted versions.  The documents are relevant, and OOIDA has not carried its burden of showing that they are shielded from discovery.

The motion is **DENIED** as to documents 1368, 1902-1904, 1905-1907, 1908-1910, 1911-1913, 1914, 1915, 2518, 2519, 2521, 2522, 2530, 2623-2624, 2795, 2796-2802, 2803-2813, 2814-2816, 2817-2824, 2825-2833, 2834-2840, 2841, and 2842-2846.  The documents are work product, and Burts has failed to overcome the work product doctrine's qualified immunity from discovery.

Finally, OOIDA **SHALL PROVIDE** the court with the following documents at the status conference scheduled for **Wednesday, February 10, 2016**, for the purposes of conducting an *in camera* review.  Documents 1366, 1367, 1950-1951, 1952-1953, 2528, 2623-2624, and 2704-2709 are documents prepared or received by Barry Ziskind, and may be protected by the attorney-client privilege and/or the work product doctrine.  Documents 1982-1983, 1984, 2010-2064, 2523-2527, 2619-2622, 2625-2628, 2656-2657, 2631-2634, 2673-2676, 2688-2690, 2851-2864, 2877-2881, and 2882-2833 are email chains that may include some non-privileged communications with liability defense counsel or third-party counsel and staff.  To facilitate the court's review, the court further orders that OOIDA **SHALL ALSO PROVIDE** an updated privilege log, identifying the roles of the individuals who sent or received these remaining disputed documents.

**IT IS SO ORDERED.**


**DATED:** February 3, 2016.

_____
**UNITED STATES MAGISTRATE JUDGE**